IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAURIE SNYDER,<br>　　Plaintiff, | :<br>: Civ. No. 09-1814<br>: |
| v. | : (Chief Judge Kane)<br>: |
| COMMONWEALTH OF<br>PENNSYLVANIA, ADMINISTRATIVE<br>OFFICE OF PENNSYLVANIA<br>COURTS, et al.,<br>　　Defendants | :<br>:<br>:<br>:<br>: |

## MEMORANDUM

Pending before the Court is Defendants' motion to dismiss or, in the alternative, for summary judgment. (Doc. No. 14.) The motion has been fully briefed and is ripe for disposition. For the following reasons, the motion will be granted in part and denied in part.

**I.　Background**[1]

Plaintiff Laurie Snyder is a 47-year-old single mother of a sixteen-year-old daughter. (Doc. No. 13 ¶¶ 1, 36.) From November 1, 1999, until she was terminated on March 2, 2009, Snyder was employed as an accountant in the Finance Department of Defendant Administrative Office of Pennsylvania Courts ("AOPC"). (Id. ¶¶ 1, 29.) The AOPC is a state agency of the Commonwealth of Pennsylvania. The individual defendants, David Kutz, Margaret Arris, Deb McDivitt, Mary Gillette, and R. Dean Stiteler, all had supervisory authority over Snyder as administrative personnel in either AOPC's finance or human resources departments. (Id. ¶¶ 23-27.)

---

[1] As is required by the standard of review applicable to Rule 12(b)(6) motions, the Court accepts Plaintiff's allegations as true. See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).

1

In January 2008, Snyder suffered a major episode of depression, of which Defendants were aware. (Id. ¶ 47.) At that time, Defendants informed Snyder that they would be transferring her job duties to a temporary accountant. (Id. ¶ 48.) On January 23, 2008, Snyder complained to Arris, AOPC's Assistant Director of Human Resources, that she was the subject of a hostile work environment, and the two discussed Snyder's depression. (Id. ¶ 49.) Snyder also complained to Arris about the unequal treatment of women in the AOPC workplace and the negative treatment of single mothers like Snyder. (Id. ¶ 51.)

Despite Snyder's complaints, Defendants failed to investigate her concerns or take any remedial action. (Id. ¶ 50.) Instead, Snyder alleges that Defendants began retaliating against her for her complaints. This retaliation first occurred in February and March 2008, when Snyder's requests to attend a professional accounting conference and continuing education training were denied. (Id. ¶¶ 53-54.) Prior to her complaints, such requests by Snyder had been routinely granted. (Id. ¶ 55.) On April 21, 2008, Snyder requested to use three hours of leave on April 25, 2008, to help her grandmother who was in the hospital with a broken hip and was suffering from complications. (Id. ¶¶ 56-57.) The request was denied by Gillette and Stiteler, Snyder's supervisors in the Finance Department, even though Snyder had accrued leave time. (Id. ¶ 58.) Furthermore, Gillette and Stiteler made negative comments about Snyder's use of leave to care for family members. (Id. ¶ 59.)

On April 22, 2008, Snyder was called into her supervisor's office, given a list of job duties, and told that she needed to go over them with the newly-hired temporary accountant. (Id. ¶ 60.) That same day, Snyder's daughter began experiencing symptoms of what Snyder alleges was a "serious health condition." (Id. ¶ 61.) Snyder attended her daughter's appointment at

Hershey Medical Center where she received a schedule for subsequent treatment of her daughter. (Id.)

On April 25, 2008, Snyder provided the schedule of her daughter's medical appointments to AOPC's human resources department and Arris and requested time off to care for her daughter. (Id. ¶ 64.) Snyder again told Arris about the harassment and scrutiny by her superiors and reiterated her concern that single mothers were discriminated against in the workplace. (Id. ¶ 65.) Defendants failed to investigate Snyder's complaints or take any remedial action. (Id. ¶ 66.) Additionally, Defendants did not offer leave to Snyder to care for her daughter under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq., or designate Snyder's absences to care for her daughter as FMLA leave. (Id. ¶¶ 2, 67.)

That same afternoon, Snyder was called into a meeting with Gillette and Stiteler, who told Snyder to act "professionally," to document every reason for her leave requests, and to list other employees who were off at her requested times. (Id. ¶ 69.) In addition, Gillette and Stiteler told Snyder that she was not allowed to discuss finance department issues with anyone from outside the department and that she should "keep her opinions to herself." (Id.) Following her meeting with Gillette and Stiteler, Snyder was afraid that she would be subjected to discipline for discussing leave with the human resources department. (Id. ¶ 70.) As a result, Snyder retrieved the schedule of her daughter's medical appointments from human resources. (Id.)

From August 2008 until October 2008, Snyder became subject to increased scrutiny by her supervisors, and her workload was gradually reduced. (Id. ¶¶ 72-83.) On October 30, 2008, Snyder met with Arris for the third time and told Arris that she was being discriminated against

3

and harassed. (Id. ¶ 84.) Arris asked Snyder if she wanted to take some time off; however, Arris did not place Snyder on FMLA leave or advise her that such leave was available to her. (Id. ¶ 86.)

On October 31, 2008, Snyder attempted to log into work through her home remote access, but she found that the remote access had been disabled by Defendants pursuant to an instruction from Gillette. (Id. ¶¶ 87-88.) Snyder contacted AOPC Human Resources and again talked to Arris. (Id. at 89.) Snyder asked what was going on and explained that she felt like she was going to be fired. (Id.) Snyder stated that her "nerves were shot" and that she could not take the harassment or hostile environment anymore. (Id.) In response, Arris told Snyder to "do whatever she felt like she needed to do." (Id.) Arris did not advise Snyder of any right to take FMLA leave. (Id. ¶ 90.) However, after her conversation with Human Resources, Snyder met with her treating medical providers, who suggested that she use FMLA leave to care for her own serious health condition. (Id. ¶ 91.)

On November 1, 2008, Snyder contacted Thomas Darr, the Deputy Court Administrator of the Pennsylvania Courts, and requested assistance with the escalating hostility at work and the ongoing transfer of her job duties to other employees. (Id. ¶ 92.) Snyder also requested an accommodation for her depression. (Id.) Snyder did not receive a response from Darr. (Id. ¶ 93.) Snyder took leave for her own medical condition on or about November 3, 2008. (Id. ¶ 94.) She provided a note from her doctors recommending that she not work at that time due to her psychological state. (Id. ¶ 94.)

On December 23, 2008, Snyder returned to work after using six weeks of FMLA leave to care for her depression. (Id. ¶ 97.) Also in December 2008, Snyder submitted a written, internal

4

complaint of discrimination. (Id. ¶ 95.) Defendants failed to take any remedial action or engage in any interactive process with Snyder. (Id. ¶ 96.) Instead, Snyder alleges that she was subjected to continued intimidation by Defendants. (Id. ¶¶ 98-99.)

On December 26, 2008, Snyder's grandmother passed away. (Id. ¶ 100.) Snyder took bereavement leave from December 29, 2008, until December 31, 2008. (Id.) Snyder returned to work on January 5, 2009. (Id. ¶ 101.) On January 13, 2009, Defendants gave Snyder a negative performance evaluation which Snyder alleges was further retaliation for complaining of discrimination and taking FMLA leave. (Id. ¶ 102.) Shortly after receiving the negative performance evaluation, Snyder resumed her approved FMLA leave for depression. (Id. ¶ 103.) She was scheduled to return on March 2, 2009. (Id.)

On February 25, 2009, prior to returning to work from her second leave, Snyder made a written request for accommodations from Defendants for her depression. (Id. ¶ 105.) On February 26, 2009, Kutz informed Snyder in writing that her request for accommodations would be forwarded to her department managers; however, no accommodation was provided. (Id. ¶¶ 106, 111.) On February 27, 2009, Snyder filed a formal complaint of discrimination and retaliation with the Pennsylvania Human Relations Commission ("PHRC") and the Equal Employment Opportunity Commission ("EEOC"). (Id. ¶ 104.)

On March 2, 2009, Snyder reported to work at the conclusion of her FMLA leave. (Id. ¶ 107.) Upon her arrival, Snyder was called into a meeting with McDivitt and Gillette, where she was terminated. (Id. ¶ 108.) Snyder filed her complaint in the above-captioned case on September 21, 2009. She filed an amended complaint on January 5, 2010.

**II.     Standard of Review**

Defendants have moved the Court to dismiss Snyder's amended complaint pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure, or in the alternative, for summary judgment under Rule 56. (Doc. No. 14 at 1.)

In analyzing a complaint under Rule 12(b)(6), "courts 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). To undertake such an analysis, the Court should first separate the factual and legal elements of a claim. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). All well-pleaded facts must be accepted as true, but mere legal conclusions may be disregarded. Id. The Court must determine whether the complaint has shown through its facts that its claim is plausible and that the plaintiff is entitled to relief. Id.; Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (stating that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level"). "This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556) (internal quotation marks omitted).

In addressing a motion to dismiss, a district court is generally limited in its review to the face of the complaint, attached exhibits, and matters of public record. However, a court may convert the motion to one for summary judgment if matters outside the pleadings are presented and not excluded. See Fed. R. Civ. P. 12(d).

**III.     Discussion**

6

In her amended complaint, Plaintiff alleges a plethora of claims under the following statutes: (1) the FMLA, 29 U.S.C. § 2601 et seq.; (2) the Americans with Disabilities Act ("ADA"), 29 U.S.C. § 791 et seq.; (3) Title VII of the Civil Rights Act, 42 U.S.C. § 2000e eq seq.; (4) the Rehabilitation Act, 29 U.S.C. § 791 et seq.; and (5) the Pennsylvania Human Relations Act, 43 P.S. § 951 et seq. (See Doc. No. 13.) Because there are multiple counts to be addressed, the Court will address each in turn.[2]

### A. FMLA Claims

In Count I of her amended complaint, Snyder alleges that Defendants interfered with her FMLA rights by failing to provide her with leave under the FMLA to care for her daughter and her own depression. (Doc. No. 13 ¶ 138.) Likewise, Count II alleges that Defendants retaliated against Snyder for taking FMLA leave to care for herself and her daughter. (Id. ¶ 170.) Courts have addressed FMLA self-care claims and dependent-care claims differently; therefore the Court will address them separately.

#### i. Self-Care Claim

Defendants argue that they are entitled to Eleventh Amendment immunity from Snyder's FMLA self-care claim. Generally, the Eleventh Amendment bars federal courts from entertaining suits by private parties against states or state agencies. Alden v. Maine, 527 U.S. 706, 750-52 (1999). However, as explained by the Third Circuit Court of Appeals,

> Eleventh Amendment immunity is not absolute . . . . States and their subunits can waive immunity by taking voluntary action inconsistent

---

[2] No challenge to Plaintiff's claim under the Rehabilitation Act is made in Defendants' motion to dismiss or the argument section of its brief in support. (See Doc. Nos. 14, 19.) Therefore, Plaintiff's Rehabilitation Act claim will survive the motion to dismiss without further analysis by the Court.

7

> therewith. For instance, a State may waive its Eleventh Amendment immunity by consenting to suit. Alternatively, Congress may require a waiver of immunity as a condition for receipt of federal funds, even though Congress could not order such a waiver directly. When a State participates in a federal financial assistance program "in light of the existing state of the law," it is on notice that its acceptance of federal funds may waive its Eleventh Amendment immunity.

Haybarger v. Lawrence Cnty. Adult Prob. and Parole, 551 F.3d 193, 198 (3d Cir. 2008) (internal citations omitted). A State may waive its immunity if it does so expressly and unequivocally, Lombardo v. Pennsylvania, Dep't of Pub. Welfare, 540 F.3d 190, 198 (3d Cir. 2008), but such waivers are disfavored absent clear evidence. Haybarger, 551 F.3d at 203.

The Commonwealth has not consented to liability, and Congress has not conditioned any funding on the abrogation of immunity from FMLA self-care claims. See Chittister v. Dep't of Cmty. and Econ. Dev., 226 F.3d 223, 226-27 (3d Cir. 2000), overruled in part by Nevada Dep't of Human Res. v. Hibbs, 538 U.S. 721 (2003). The Court is unpersuaded by Snyder's arguments to the contrary. Snyder first argues that Congress validly abrogated the Commonwealth's immunity against self-care claims when it enacted the FMLA. (Doc. No. 24 at 16-20.) This argument has already been addressed and rejected by the Third Circuit and need not be reproduced here. See Chittister, 226 F.3d at 228-29; see also Banks v. Court of Common Pleas FJD, 342 F. App'x 818, 821 (3d Cir. 2009) (noting that Chittister is still good law as to self-care claims and that "private suits still may not be brought against states where the self-care provisions of the [FMLA] are implicated").

Snyder next argues that the AOPC has waived its immunity by accepting federal funding and disseminating policies to its employees promising to abide by the FMLA. (Doc. No. 24 at 24-27.) This argument is unconvincing. Although the AOPC policy at issue is titled "Family

8

and Medical Leave," it makes no reference whatsoever to the federal provisions of the Family and Medical Leave Act. (See Doc. No. 13, Ex. 2.) Furthermore, Snyder has pointed to no evidence that the Commonwealth's receipt of federal funds was conditioned on waiving its immunity against FMLA claims.[3] Therefore, because AOPC has not waived its immunity, the FMLA self-care claim against AOPC will be dismissed.

Whether Eleventh Amendment immunity extends to the individual defendants in this case presents a different issue. "As a general rule, suits seeking damages from state officials in their individual capacities are not barred by the Eleventh Amendment." Cornforth v. Univ. of Okla. Bd. of Regents, 263 F.3d 1129, 1132-33 (10th Cir. 2001) (citing Hafer v. Melo, 502 U.S. 21, 30-31 (1991); Papasan v. Allain, 478 U.S. 265, 277 n.11 (1986)); see also Winn v. Lynn, 941 F.2d 236, 241 (3d Cir. 1991) (holding Eleventh Amendment bar was irrelevant where plaintiff sought relief against state officials in their individual capacities). Because the FMLA clearly contemplates that individuals may be held liable as "employers," see 29 U.S.C. § 2611(4)(A)(ii)(I), the Court need only determine whether public employees are somehow specially exempted from that definition. The statute at issue, 29 U.S.C. § 2611(4)(A), states that the term "employer":

> (i) means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year;
>
> (ii) includes--

---

[3] Snyder notes that in its Equal Opportunity Plan, AOPC states that its hiring policies "are intended to conform to all provisions" of state and federal law. (Doc. No. 24 at 25.) While this is evidence of an intent to follow federal law, it does not appear to the Court to be clear evidence of waiver of immunity.

> > (I) any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer; and
>
> > (II) any successor in interest of an employer;
>
> > (iii) includes any "public agency", as defined in section 203(x) of this title; and
>
> > (iv) includes the Government Accountability Office and the Library of Congress.

29 U.S.C. § 2611(4)(A). Courts that have found that public employees are employers under the FMLA, and can therefore be held individually liable, have done so by applying a sort of syllogism. First, an "employer" may be defined as either: (1) an entity that employs 50 or more employees, or (2) a public agency.[4] Id. § 2611(4)(A)(i) & (iii). Second, an employer may also include "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." Id. § 2611(4)(A)(ii)(I). Therefore, a public employee can be considered an employer because he or she acts in the interest of the public agency, which is an employer under the FMLA. See Modica v. Taylor, 465 F.3d 174, 184 (5th Cir. 2006); Darby v. Bratch, 287 F.3d 673, 681 (8th Cir. 2002). Although no guidance has yet come from the Third Circuit, district courts within this circuit have largely adopted this approach. See Harrison v. Henry, No. 08-352, 2009 WL 464260, at *5 (D. Del. Feb. 24, 2009); Hayduk v. City of Johnstown, 580 F. Supp. 2d 429, 476-77 (W.D. Pa. 2008); Hewitt v. Willingboro Bd. of Educ., 421 F. Supp. 2d 814, 817-21 (D.N.J. 2006); Smith v. Genesis Ventures I, LLC, No. 06-1473, 2006 WL 3592330, at *4 (E.D. Pa. Dec. 8, 2006); Kilvitis v. Cnty. of Luzerne, 52 F. Supp. 2d

---

[4] The definition of a "public agency" includes "any agency of . . . a State, or a political subdivision of a State . . . ." 29 U.S.C. § 203(x).

403, 413-16 (M.D. Pa. 1999). But see Smith v. Virgin Islands Port Auth., Civ. No. 2002-227, 2005 WL 15459, at *12 (D.V.I. Jan. 2, 2005).

Several circuit courts of appeals have determined that public employees may not be held liable under the FMLA. In those circuits, clause (ii) of § 2611(4)(A) is read as inapplicable to clause (iii); therefore, those circuits hold that an employee working in the interest of a public agency is not an employer under the terms of the FMLA. See Mitchell v. Chapman, 343 F.3d 811, 830-31 (6th Cir. 2003) (concluding that the § 2611(4)(A)'s "text and structure reveals that the statute does not impose individual liability on public agency employers"), abrogated in part on other grounds by 14 Penn Plaza LLC v. Pyett, 129 S. Ct. 1456 (2009); Wascura v. Carver, 169 F.3d 683, 685-87 (11th Cir. 1999) (holding that a public official sued in her individual capacity is not an "employer" under the FMLA); see also Lizzi v. Alexander, 255 F.3d 128, 136-38 (4th Cir. 2001) (holding that immunity extends to public employees because the state is the real party in interest), overruled in part on other grounds by Hibbs, 538 U.S. 721.

The Court finds that the clearest reading of § 2611(4)(A) is that a public employee may be held individually liable as an "employer." "When statutory language is plain and unambiguous, 'the sole function of the courts . . . is to enforce it according to its terms." In re Visteon Corp., 612 F.3d 210, 220 (3d Cir. 2010) (citation omitted). A cardinal rule of statutory interpretation is that "a statute is to be read as a whole." Id. at 222 (citation omitted). The Court is unpersuaded by the reasoning in cases such as Mitchell that the clauses in § 2611(4)(A) should be read separately. Accordingly, the motion to dismiss the FMLA self-care claims against the individual Defendants will be denied.

### ii. Dependent-Care Claims

Unlike self-care claims, Congress has abrogated the States' Eleventh Amendment immunity from FMLA dependent-care claims. See Hibbs, 538 U.S. at 726, 737. As a result, Defendants do not seek immunity from Snyder's dependant-care claim. Instead, Defendants argue that Snyder has failed to meet the pleading standard under Twombly, 550 U.S. 544, and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009):

> Here, it is undisputed that [Snyder] never requested dependent care FMLA leave. Thus, she has to show that Defendants had reason to know that she needed FMLA leave. [Snyder] cannot rely upon her earlier absences in 2008 to argue that Defendants should have known she needed dependent care FMLA leave as her daughter did not have symptoms of a serious health condition until April 22, 2008. Thus, whatever the purpose of the earlier family sick leave time may have been, it was not for her daughter's serious medical condition. Even if it was, as alleged in the Amended Complaint, [Snyder] herself did not know it was a serious health condition, and it would be illogical to contend that Defendants should have known.

(Doc. No. 19 at 25-26.) Defendants further argue that Snyder cannot show "any prejudice from the alleged failure to advise her of her FMLA rights as related to her daughter's doctor's appointments." (Id. at 26.) To the contrary, Snyder alleges in her amended complaint that her daughter had a serious medical condition and Snyder sought leave to care for her. (Doc. No. 13 ¶¶ 61-67.) Snyder states that she was prejudiced by her request for leave when she was subject of a "series of adverse actions" which "continued until she was terminated immediately upon her return from FMLA leave." (Doc. No. 24 at 36; see Doc. No. 19 ¶¶ 140-41, 170.) Snyder has adequately stated a cognizable dependent-care claim, and Defendants' motion to dismiss that claim will be denied.

**C.  ADA Claims**

12

In Count III of her amended complaint, Snyder alleges that she was a "qualified individual with a disability who could perform the essential functions of her job with or without a reasonable accommodation." (Doc. No. 13 ¶ 186.) Snyder avers that the AOPC was aware of her record of disability and her need for an accommodation, yet the AOPC failed to provide an accommodation or engage in the interactive process of determining whether an accommodation could be made. (Id. ¶¶ 187-90.) Snyder contends that the AOPC discriminated against, retaliated against, and harassed Snyder because of her disability. (Id. ¶¶ 192-96.)

"The ADA has three separate titles: Title I covers employment discrimination, Title II covers discrimination by government entities, and Title III covers discrimination by places of public accommodation." PGA Tour, Inc. v. Martin, 532 U.S. 661, 691-92 (2001) (Scalia, J., dissenting). Although Snyder does not specify whether her claim against the AOPC arises under Title I or Title II, it appears to the Court that the only possible route is Title I, as this Court has previously held that employment discrimination suits are not cognizable under Title II. See McSherry v. Dep't of Labor & Indus., No. 1:04-cv-132, 2006 WL 463157, at *9 (M.D. Pa. Feb. 23, 2006). Snyder's Title I claim fails, however, because suits against States for failing to comply with Title I of the ADA are barred by the Eleventh Amendment. See Bd. of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356, 360 (2001); see also Benn v. First Judicial Dist., 426 F.3d 233, 239 (3d Cir. 2005) ("It follows that Pennsylvania, if sued under Title I, retains its Eleventh Amendment immunity."). Snyder argues that her ADA claim against the AOPC should not be barred. (See Doc. No. 24 at 16, 25.) However, she fails to persuade the Court that the Commonwealth has consented to limit the immunity afforded to it and its agencies against such

13

claims. Therefore, the motion to dismiss the ADA claim against the AOPC must be granted.[5]

### D. PHRA Claims

Snyder has also alleged claims under the PHRA. Defendants assert that the PHRA does not apply to the AOPC or its employees because the AOPC is an entity of the Pennyslvania judicial branch of government. (Doc. No. 19 at 29-30.) As such, Pennsylvania has retained its immunity against PHRA claims when they are brought in federal court. See 42 Pa. Cons. Stat. Ann. § 8521(b) (West 2007). Although Snyder asks that immunity not be extended to the AOPC, her opposition brief does not provide any support to allow for any abrogation of such immunity. (See Doc. No. 24 at 16-27.) Therefore, the PHRA claims against the AOPC must be dismissed.

Snyder's claims against the individual Defendants present a different analysis. Defendants argue that the real party in interest is the AOPC, and therefore Eleventh Amendment immunity should extend to the individual Defendants. (See Doc. No. 19 at 15-16.) Contrary to Defendants' argument, the PHRA contemplates individual liability for aiding and abetting employers' violations of the PHRA. Specifically, § 955(e) of the PHRA, forbids "any person, employer, employment agency, labor organization or employe [sic], to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice." 43 Pa. Cons. Stat. Ann. § 955(e) (West 2009). The Third Circuit has recognized that an individual supervisor is a proper defendant under § 955(e) and may be held liable for aiding

---

[5] Because the Court finds that the AOPC has immunity from Snyder's ADA claim, the Court will not address Defendants' secondary argument that Snyder failed to exhaust her administrative remedies as to that claim.

and abetting discriminatory practices by employers. See Dici v. Pennsylvania, 91 F.3d 542, 552-53 (3d Cir. 1996). Here, Snyder has alleged that each of the individual Defendants worked in a supervisory capacity to her. As a result, the Court is unpersuaded by Defendants' argument that they cannot be held individually liable. See id. (finding that claims against supervisor were cognizable under § 955(e), while claims against mere coworker were not); see also Carlton v. City of Philadelphia, No. 03-1620, 2004 WL 633279, at *8 (E.D. Pa. Mar. 30, 2004) (finding plaintiff had sufficiently pled claim that defendants were supervisory employees under § 955(e) who aided and abetted violations of the PHRA).

Defendants next contend that Snyder has failed to assert a cognizable sex discrimination claim under the PHRA. (Doc. No. 19 at 27-29.) The standards for analyzing discrimination under the PHRA are the same as under Title VII. See Goosby v. Johnson & Johnson Medical, Inc., 228 F.3d 313, 317 n.3 (3d Cir. 2000). Under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), Snyder must establish a prima facie case of discrimination. Goosby, 228 F.3d at 318. "To do so she must offer sufficient evidence that she was: (1) a member of the protected class, (2) qualified for the position she sought, and (3) nonmembers of the protected class were treated more favorably." Id. at 318-19.

Defendants argue that Snyder's amended complaint fails to state a prima facie discrimination claim because she fails to "identify any males who were allegedly treated more favorably or provide examples of such treatment." (Doc. No. 19 at 28.) Although the Court agrees that no similarly situated male employees are identified by name in the amended complaint, Snyder's allegations do support a reasonable inference that she was discriminated against on the basis of her sex. Snyder avers that she was "subject to adverse employment

15

actions, including termination . . . because of her sex (female) including her family responsibilities as a single mother." (Doc. No. 13 ¶¶ 278-79.) Synder's factual allegations support this claim, as she alleges that she complained of the treatment of single mothers in the workplace, which resulted in retaliatory actions by Defendants such as refusing to allow her to attend an accounting conference or to take time off to care for her ailing grandmother. (Id. ¶¶ 51-53.) Therefore, Sndyer's amended complaint has raised a reasonable inference that she was treated differently than similarly situated employees; her claim is legally plausible and survives the motion to dismiss stage. Fowler, 578 F.3d at 211; see also Hobson v. St. Luke's Hospital and Health Network, - - F. Supp. 2d - - - -, No. 08-cv-5652, 2010 WL 3220365, at *6 (E.D. Pa. Aug. 12, 2010) ("[E]ven if a plaintiff does not plead facts supporting an inference of differential treatment of similarly situated individuals outside the plaintiff's protective class, the plaintiff can still present a prima facie case provided that [she] can point to facts tending to establish that [she] suffered an adverse employment action under circumstances giving rise to an inference of discrimination." (internal quotation marks and citation omitted)).

Finally, Defendants contend that the PHRA does not apply to Defendants because it is inapplicable to the judiciary. (Doc. No. 19 at 29-30.) In light of state precedent, the Court also finds this argument unconvincing. See Court of Common Pleas of Erie Cnty. v. PHRC, 682 A.2d 1246, 1249 (Pa. 1996) (recognizing that after the PHRC dismisses a judicial employee's claims for lack of jurisdiction, the employee "may file actions in the court of common pleas based on the rights granted by the PHRA" or "file civil rights actions under 42 U.S.C. § 2000e").

### F.    Title VII Claims

Snyder alleges a violation of Title VII solely against the AOPC. Defendants argue that

Snyder has failed to exhaust her administrative remedies in order to bring her claim under Title VII. Defendants also contend that Snyder has failed to state a cognizable Title VII claim.

Prior to filing a Title VII claim, a state court employee must first file a charge with the EEOC. 42 U.S.C. § 2000e-5(e)(1). A complainant may not bring a Title VII suit without having first received notice from the EEOC, generally in the form of a right-to-sue letter, that agency remedies have been exhausted. Burgh v. Borough Council of Montrose, 251 F.3d 465, 470 (3d Cir. 2001); Ebbert v. DaimlerChrysler Corp., 319 F.3d 103, 116 n.14 (3d Cir. 2003). "In Title VII actions, failure to exhaust administrative remedies is an affirmative defense in the nature of statute of limitations. . . . [and] the defendant bears the burden of pleading and proving that the plaintiff has failed to exhaust administrative remedies." Williams v. Runyon, 130 F.3d 568, 573 (3d Cir. 1997) (citations omitted). "The purpose of this administrative exhaustion requirement is to put the EEOC on notice of the plaintiff's claims and afford it 'the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court.'" Webb v. City of Philadelphia, 562 F.3d 256, 262 (3d Cir. 2009) (citations omitted).

Here, Defendants first assert that Snyder never filed a complaint with the EEOC or obtained a right-to-sue letter. (Doc. No. 19 at 23.) In response, Snyder states that she did indeed file a complaint with the EEOC within 180 days of the adverse action taken against her and that "she has taken all necessary steps to bring her sex and disability discrimination claims in court and they are not time-barred." (Doc. No. 24 at 31.) To bring a Title VII claim in federal court requires not only filing the claim with the EEOC. Instead, a plaintiff must also receive notice from the EEOC, usually through the issuance of a right-to-sue letter, that agency remedies have been exhausted. In their reply brief, Defendants point out this omission. Snyder has not

17

produced a right-to-sue letter, nor has she made any averment that she was provided notice of administrative exhaustion by the EEOC.[6] (Doc. No. 25 at 6-7.) Therefore, the Court will dismiss the Title VII claim. The Court will allow Snyder leave to amend her complaint to demonstrate that she exhausted her administrative remedies before filing her Title VII claim.[7]

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss will be granted in part and denied in part. An order consistent with this memorandum follows.

---

[6] Indeed, Plaintiff's amended complaint only mentions any action being taken by the PHRC, as Plaintiff states that "[t]he PHRC declined to docket both of Ms. Snyder's complaints, claiming the agency has no jurisdiction over the Defendants under the separation of powers doctrine." (Doc. No. 13 ¶ 15.)

[7] The Court notes that Defendants have also challenged whether Snyder has alleged a cognizable claim under Title VII. However, as with the PHRA sex discrimination claim, the Court finds that Snyder's factual averments are sufficient to withstand Defendants' motion to dismiss on this basis.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAURIE SNYDER, | : |
|     Plaintiff, | :   Civ. No. 09-1814 |
| | : |
| v. | :   (Chief Judge Kane) |
| | : |
| COMMONWEALTH OF | : |
| PENNSYLVANIA, ADMINISTRATIVE | : |
| OFFICE OF PENNSYLVANIA | : |
| COURTS, et al., | : |
|     Defendants | : |

## ORDER

**AND NOW**, on this 27th day of October 2010, in review of Defendants' motion to dismiss, or in the alternative, for summary judgment, (Doc. No. 14), it is **HEREBY ORDERED THAT:**

1. The motion is **GRANTED** to the following extent: Plaintiff Laurie Snyder's FMLA self-care claim against AOPC is dismissed. Plaintiff's ADA, Title VII, and PHRA claims against AOPC are dismissed. As to the remainder of Plaintif's claims, Defendants' motion to dismiss is **DENIED**.

2. Plaintiff will be given leave to amend her complaint to demonstrate that she has administratively exhausted her Title VII claim. Plaintiff will have until November 12, 2010, to file such an amended complaint.

3. The Clerk of Court shall defer entering judgment until all claims have been resolved.

4. The Court-ordered stay, (see Doc. No. 27), is hereby removed.

5. The Court will hold a telephone conference at 9:30 a.m. on December 2, 2010 to set new deadlines in the case. Plaintiff's counsel shall initiate the call.

                                        S/ Yvette Kane

Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania